UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN WIGGS,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    No. 5:20-cv-02267 |
| | : |
| DONALD FOLEY and DAVID SHEARN<br>    Defendants. | :<br>: |

**O P I N I O N**
Motion to Dismiss for Failure to State a Claim, ECF No. 9 – Granted

**Joseph F. Leeson, Jr.**　　　　　　　　　　　　　　　　　　　　　　　　　　February 9, 2021
**United States District Judge**

I. **INTRODUCTION**

Plaintiff Steven Wiggs filed the present action against Defendant Pennsylvania State Trooper Donald Foley and Pennsylvania State Police Corporal David Shearn, alleging claims under 42 U.S.C. § 1983 for malicious prosecution, false arrest, and conspiracy to commit malicious prosecution and false arrest. Defendants filed the present Motion to Dismiss for Failure to State a Claim, or in the alternative, Motion for Summary Judgment. Wiggs responded to the motion, arguing against dismissal of his claims and objecting to treatment of the motion as one for summary judgment.

For the reasons set forth below, the Court treats this motion as a Motion to Dismiss for Failure to State a Claim as opposed to one for summary judgment. Following review of the motion and Complaint, Defendants' motion to dismiss is granted in its entirety.

## II.     BACKGROUND[1]

On January 13, 2018, Wiggs was cited by the Pennsylvania State Police for violating 75 Pa. Cons. Stat. § 4571(b)(1).[2]  *See* Compl. ¶ 6.  Thereafter, on April 9, 2018, Wiggs appeared before the Philadelphia Municipal Court Traffic Division regarding the violation.  *See id.* at ¶ 7.  When he arrived at court, Wiggs alleges that he identified himself as a Pennsylvania State Constable and carried a firearm, which he surrendered to security prior to entering the courthouse.  *See id.* at ¶ 8-9.  Wiggs alleges that during the hearing, he continued to represent himself as a Pennsylvania State Constable to the Hearing Officer.  *See id.* at ¶ 10.

Following that hearing, on July 13, 2018, Foley, a State Trooper with the Pennsylvania State Police, prepared an affidavit of probable cause for Wiggs' arrest.  *See id.* at ¶ 11.  The instant Complaint alleges that the affidavit contained false statements of fact.  *See id.* at ¶ 12.  Wiggs alleges, first, the affidavit falsely represented that Wiggs identified himself as a police officer at the Traffic Division hearing.  *See id.*  Second, the affidavit allegedly falsely claimed that Wiggs was without authorization to carry a firearm.  *See id.*  Based on the affidavit, a warrant was issued for Wiggs' arrest, and he was arrested on July 18, 2018.  *See id.* at ¶ 13.  Wiggs was charged with violating the Pennsylvania Uniform Firearms Act (PUFA) and impersonating a public servant.  *See id.*  Wiggs had his firearm confiscated at the time of arrest.  *See id.*

Wiggs appeared for a preliminary hearing on these charges in Philadelphia Municipal Court.  *See id.* at ¶ 14.  There, the impersonation charge was dropped, but the PUFA violation

---

[1]     The background is taken, in its entirety, from the allegations in Wiggs' Complaint.
[2]     The statute addresses the use of "[v]isual and audible signals on emergency vehicles." *See* 75 Pa. Cons. Stat. § 4571.  The relevant portion of the statute states that "[t]he combination of red and blue lights may be used only on police, sheriff, coroner, medical examiner or fire police vehicles."  *See id*. § 4571(b)(1).

was held for court.  *See id.*  As to the PUFA charge, the Complaint alleges Foley falsely testified that Wiggs was without authorization to carry a firearm.  *See id.* at ¶ 15.  Allegedly as a result of the charges against him, on September 23, 2018, Wiggs received notice that he was suspended from his employment.  *See id*. at ¶ 16.

On September 27, 2018, a pretrial conference was held in Wiggs' case.  *See id.* at ¶ 17.  Wiggs arrived at the Stout Center for Criminal Justice on that day while carrying his firearm, which he surrendered to security when he entered the court building.  *See id.*  When Wiggs left the building following the hearing, Shearn arrested Wiggs, took him into custody, and confiscated his vehicle and firearm.  *See id.* at ¶ 18.  The instant Complaint alleges Shearn submitted an arrest report that contained false statements of fact, including the misrepresentations that Wiggs falsely represented himself as a police officer and was not authorized to carry a firearm.  *See id.* at ¶ 19.

Following this second arrest, Wiggs was again charged with violation of the PUFA and impersonating a public servant.  *See id.* at ¶ 20.  On January 17, 2019, the PUFA charge that was held for court following Wiggs' July 18, 2018 arrest was dismissed, leaving only the charges stemming from his second arrest.  *See id.* at ¶ 21.  Thereafter, on June 18, 2019, the charges stemming from Wiggs' second arrest were *nolle prossed*.  *See id.* at ¶ 22.

Based on these allegations, Wiggs asserts that both Foley and Shearn maliciously prosecuted and falsely arrested Wiggs.  *See id.* at ¶¶ 25, 30.  In addition, Wiggs asserts that Foley and Shearn conspired to maliciously prosecute and falsely arrest Wiggs.  *See id.* at ¶ 34.

### III.     LEGAL STANDARDS

####     A.     Converting Motion to Dismiss into One for Summary Judgment

Under Federal Rule of Civil Procedure 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *See* FED. R. CIV. P. 12(d). "Whether or not to treat the motion [to dismiss] as a motion for summary judgment by considering the outside materials attached thereto is a matter of discretion for the court." *Brennan v. Nat'l Tel. Directory Corp.*, 850 F. Supp. 331, 335 (E.D. Pa. 1994). Notwithstanding, "courts have held that exercise of the court's discretion is not warranted where there has been little or no discovery conducted by the parties." *See id.* (collecting cases). In such cases, the parties "may not be able to present enough material to support or oppose a motion for summary judgment since no factual record has yet been developed." *See id.* (citing *Ospina v. Dep't of Corr.*, 749 F. Supp. 572, 574 (D. Del. 1990)).

####     B.     The Law Governing Motions to Dismiss for Failure to State a Claim

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true

all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### C. Review of the Law Governing Actions for Malicious Prosecution

To state a claim for malicious prosecution, a plaintiff must show:

(1) "the defendants initiated criminal proceedings;"

(2) the proceeding "ended in plaintiff's favor;"

(3) "the proceeding was initiated without probable cause;"

(4) "the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice;" and

(5) "the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."

*Malcomb v. McKean*, 535 F. App'x 184, 186 (3d Cir. 2013) (quoting *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009)).

"Police officers (as opposed to prosecutors) may be liable for malicious prosecution if they 'conceal or misrepresent material facts' to the prosecutor." *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 379 (E.D. Pa. 2018) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014)).

Importantly, claims of malicious prosecution lodged under § 1983 require an element above and beyond a state law claim of malicious prosecution, namely that the plaintiff allege he

suffered a deprivation of liberty akin to a seizure.  *See id.* (citing *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000).   The focal point of the deprivation is the period after prosecution begins.  *See Roberts v. Caesar's Entm't, Inc.*, 72 F. Supp. 3d 575, 581 (E.D. Pa. 2014) ("The claim arises from the prosecution, not the arrest.").  In assessing whether a sufficient deprivation has occurred, courts look for "either pretrial custody or 'some onerous types of pretrial, non-custodial restrictions.'"  *See id.* (citing *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005)).

      **D.**      **Review of the Law Governing Actions for False Arrest**

"To prevail on a false arrest claim under Section 1983, a plaintiff must demonstrate that the police lacked probable cause to make the arrest."  *Campeggio v. Upper Pottsgrove Township*, Civ. A. No. 14-1286, 2014 WL 4435396, at *4 (E.D. Pa. Sept. 8, 2014) (citing *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir.1995)).  The proper inquiry is "whether the arresting officers had probable cause to believe the person arrested had committed the offense," regardless of whether the offense was actually committed.  *See id.* (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)).  "An officer has probable cause for an arrest 'when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'"  *See id.* at *5 (citing *Orsatti v. New Jersey*, 71 F.3d 480, 483 (3d Cir. 1995)).

To make out a claim for false arrest, a plaintiff must show:

 "(1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;'" and

"(2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" *See Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)).

### E. Review of the Law Concerning Actions for Conspiracy to Commit Malicious Prosecution or False Arrest

To make out a conspiracy to violate one's civil rights under § 1983, a plaintiff must show:

"(1) the existence of a conspiracy involving state action;" and

"(2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *See Rosembert v. Borough of East Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014) (quoting *Gale v. Storti*, 608 F. Supp. 2d 629, 635 (E.D. Pa. 2009)). "A plaintiff must allege that there was an agreement or meeting of the minds to violate his constitutional rights." *Id.*

### F. The Law Governing Qualified Immunity

"Qualified immunity is not merely immunity from liability, but rather immunity from suit, operating to free the recipient from the burdens of litigation." *Muth v. Woodring*, 666 F. App'x 137, 138 (3d Cir. 2016) (citing *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014)). Accordingly, courts are to resolve questions of immunity at the "earliest possible stages of litigation." *See id.* at 138-39 (quoting *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002)) (noting district court appropriately considered immunity question at pleadings stage). Notwithstanding, "[a]s it is an affirmative defense, 'qualified immunity should only be granted on a motion to dismiss when it is established on the face of the complaint.'" *See Morency v. City of Allentown*,

No. 5:19-cv-5304, 2020 WL 1935640, at *14 (E.D. Pa. Apr. 22, 2020) (quoting *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 126 (D.N.J. 2017)).

Questions of qualified immunity require a two-facet analysis.[3]  See *Muth*, 666 F. App'x at 139:

(1)  The first "probes whether the allegations, '[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right[.]'" *See id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); and

(2)  The second asks "whether the law was clearly established at the time of the violation." *See id.* (quoting *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d. Cir. 2010)).  A law is clearly established if, "at the time of the challenged incident, [it] is sufficiently clear to 'provide[ ] fair warning to the defendants that their alleged conduct was unconstitutional.'" *See id.* (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)).

Where a plaintiff fails to establish the underlying offense through his or her allegations, "there is no necessity for further inquiries concerning qualified immunity." *See Saucier*, 533 U.S. at 201; *see also Fields v. City of Pittsburgh*, 714 F. App'x 137, 143 (3d Cir. 2017) ("[Plaintiff's] § 1983 claim fails and we need not consider the issue of qualified immunity." (citing *Saucier*, 533 U.S. at 201)).

---

[3]  Although Defendants assert that they as police officers are owed absolute immunity, the opposite is true. *See Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995) ("Government officials, such as police officers, are accorded qualified rather than absolute immunity in order to accommodate two important interests: the officials' interest in performing their duties without the fear of constantly defending themselves against insubstantial claims for damages, and the public's interest in recovering damages when government officials unreasonably invade or violate individual rights under the Constitution and laws of the United States." (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987))).

IV.     **DISCUSSION**

    A.     **Conversion of Motion**

To their motion, Defendants attach numerous exhibits.  Additionally, Defendants indicate in the title of their motion that they would like it treated as a motion to dismiss or, alternatively, as one for summary judgment.  Wiggs, in his response to Defendants' motion, opposes conversion of the motion to one for summary judgment, asking the Court to defer ruling on a motion for summary judgment until discovery has begun.  *See* Resp. 21, ECF No. 11 (ECF Pagination).

This Court declines to convert Defendants' motion into one for summary judgment.  The motion at issue was filed just one month after Wiggs filed his Complaint.  Furthermore, although Wiggs was able to attach some exhibits to his response to Defendants' motion, Wiggs notes that the record is not substantially developed because neither party has taken discovery yet.  *See id.*; *see also Brennan*, 850 F. Supp. at 335 (declining to convert motion where it was filed one month after complaint and discovery had not yet begun).  Moreover, as explained below, Wiggs wholly fails to state a claim.  Therefore, it would be inappropriate at this juncture to order qualified immunity discovery.

Accordingly, it would be premature to consider this motion as one for summary judgment, and the Court reviews it as a motion to dismiss.

    B.     **Malicious Prosecution**

Wiggs alleges claims of malicious prosecution against both Foley and Shearn.  Among other elements, a plaintiff seeking to state a claim for malicious prosecution under federal law must allege a deprivation akin to a seizure.  *Malcomb*, 535 F. App'x at 186 (quoting *Kossler*, 564 F.3d at 186); *see also Roberts*, 72 F. Supp. 3d at 581 (noting deprivation can take the form of

pretrial custody or onerous, non-custodial restrictions).  Even if this Court assumes arguendo that Wiggs sufficiently alleges all other elements, he fails to sufficiently allege this critical element.

In assessing whether a seizure has occurred, courts look for either pretrial custody or onerous pretrial restrictions on a defendant's liberty.  *See Gallo v. City of Phila.*, 161 F.3d 217, 222 (3d Cir. 1998) (finding onerous restrictions where defendant "had to post a $10,000 bond, he had to attend all court hearings including his trial and arraignment, he was required to contact Pretrial Services on a weekly basis, and he was prohibited from traveling outside New Jersey and Pennsylvania for over eight months").  On the other hand, where a plaintiff's sole injury is the expense and time required to attend hearings related to their charges, the restrictions are not so onerous as to constitute a seizure.  *See Roberts*, 72 F. Supp. 3d at 581-82 ("Merely having to appear in court to answer charges does not qualify as a Fourth Amendment seizure." (citing *Basile v. Township of Smith*, 752 F. Supp. 2d 643 (W.D. Pa. 2010))).

In his Complaint, Wiggs alleges that he was "compelled to hire an attorney at his personal expense, made to endure the rigors of protracted criminal prosecution, and suspended from his usual employment."  *See* Compl. ¶¶ 27, 32.  Taking these allegations as true for the purpose of this motion, they do not rise to the level of the sort of deprivation of liberty required to sustain a federal malicious prosecution action.  Wiggs does not allege that he was held in custody pending trial.

Furthermore, the non-custodial deprivations that Wiggs' alleges do not rise to the level of a seizure cognizable under the Fourth Amendment.  Rather, they relate solely to his appearance in court to answer the charges against him.  Accordingly, these deprivations fall short of the onerous restrictions on liberty that courts look for when assessing whether a seizure has occurred.  Wiggs alleges that he was suspended from his usual employment.  Notwithstanding,

Wiggs does not allege that this suspension was the result of a restriction placed on him by the prosecution pending trial. None of these allegations rise to the level of a deprivation of liberty akin to a seizure.

Because Wiggs fails to allege that he suffered a sufficient deprivation of liberty, he fails to make out a prima facie case of malicious prosecution. Accordingly, his claims of malicious prosecution against both Defendants are dismissed without prejudice.

### C. False Arrest

Wiggs next alleges claims of false arrest against both Foley and Shearn. Defendants move to dismiss these claims for failure to state a claim. Because Wiggs fails to allege the requisite elements of a false arrest claim, the motion is granted with respect to the false arrest claims against both Defendants.

In order to make out a claim for false arrest, Wiggs must allege that the Defendants "knowingly and deliberately, or with a reckless disregard for the truth," made false statements that created in a material falsehood in the warrant for Wiggs' arrest. *See Wilson*, 212 F.3d at 786-87 (quoting *Sherwood*, 113 F.3d at 399). In his Complaint, Wiggs alleges that documents prepared by Defendants contained "numerous false statements of fact." *See* Compl. ¶ 12 (relating to Foley's affidavit of probable cause); *see also id.* at ¶ 19 (stating arrest report prepared by Shearn contained "multiple false statement of fact"). However, Wiggs' allegations begin and end there. Wiggs makes no effort to allege that either Foley or Shearn acted knowingly, deliberately, or with reckless disregard for the truth.

For example, Wiggs alleges that Defendants falsely claimed that Wiggs "represented himself as a police officer at the hearing in his case." *See id.* at ¶ 12. Although Wiggs alleges the existence of a falsehood, he does not allege that either Defendant acted with the requisite

culpability in creating that falsehood.[4]  Absent any allegation that Defendants, at a minimum, acted with a reckless disregard for the truth, there is nothing to separate them from one who mistakenly includes a fact in an affidavit that is later discovered to be untrue.

Wiggs also asserts that Defendants falsely claimed that Wiggs was not legally authorized to carry a firearm.  *See id.*  Wiggs asserts that 18 Pa. Cons. Stat. § 6106(b)(1) clearly authorizes him to carry a firearm.  *See id.*  Presumably, Wiggs intends to allege that Defendants knowingly and deliberately ignored this Pennsylvania statute in preparing their respective reports.

Notwithstanding, the allegations do not suffice to state a claim for false arrest.  Section 6106 provides a list of persons eligible to carry a firearm without a license.  *See* 18 Pa. Cons. Stat. § 6106(a)(1).  The statute does in fact list "constables" as persons permitted to carry a firearm without a license.  *See id.* at 6106(b)(1).  That being said, Section 6106 cannot reasonably be read as providing constables an *absolute* right to carry a firearm.  This is especially clear in light of Chapter 431 of the Pennsylvania Code, which governs constable education and training.  *See* 37 Pa. Code. § 431.  Subsection 41 of that Chapter states, "[a] constable shall complete a basic firearms qualification course established by the Board to attain initial firearms qualification."  *See id.* § 431.41(a).  It goes on to state that after achieving initial qualification, "the constable shall complete the Board's *annual* firearms qualification course to

---

[4] To his responsive brief, Wiggs attached a copy of the transcript from his Traffic Court Hearing.  *See* Hearing N.T. 04/19/18, ECF No. 11-5.  Wiggs alleges that Foley's affidavit *falsely* stated that Wiggs represented himself as a police officer at this hearing.  Although the Court did not consider the transcript in its review of this motion, it is nonetheless an enlightening look into why Foley might have included statements in his affidavit that suggested Wiggs represented himself as a police officer at the hearing.  *See id.* at 4:14-16 ("We are recognized as police officers, and I have documentation identifying us as such."); *id.* at 5:18-19 ("[W]e're recognized as police officers . . . ."); *id.* at 6:11-12 ("[T]hat recognizes us as police officers . . . ."); *id.* at 13:20-22 ("The state recognizes me as a police officer.  The Federal Court recognizes us as police officers.").

maintain firearms qualification." *See id.* § 431.41(b) (emphasis added). If a constable fails to meet those requirements, his or her firearms qualification lapses immediately. *See id.* § 431.48(a).

In light of Chapter 431, it is clear that Section 6106(b)(1) does not provide constables with a blanket authorization to carry a firearm wherever and whenever. Contrary to Wiggs' allegations, the mere existence of Section 6106(b)(1) does not render Foley's affidavit or Shearn's report knowingly, deliberately, or recklessly false. Without more, Wiggs has failed to allege that either Defendant acted with, at a minimum, a reckless disregard for the truth in stating that Wiggs was unauthorized to carry a firearm.

Bald legal conclusions that the Defendants "falsified" affidavits, without more, cannot sustain Wiggs' claims against Foley and Shearn for false arrest. Accordingly, the motion is granted with respect to Wiggs' false arrest claims against Foley and Shearn.

### D. Conspiracy Claim

Finally, Wiggs alleges that both Foley and Shearn engaged in a conspiracy to falsely arrest and maliciously prosecute Wiggs. Notwithstanding, Wiggs' claim of conspiracy is not supported by any factual allegations. One lone allegation comprises the entirety of Wiggs' conspiracy claim, in which Wiggs merely asserts "Defendants acted in concert with each other in a conspiracy to maliciously prosecute and wrongfully arrest the Plaintiff . . . ." *See id.* at ¶ 34. There are no other allegations in the Complaint that relate to, let alone factually support, this legal conclusion.

Therefore, Wiggs has failed to plead factual allegations sufficient to raise the right to relief beyond a purely speculative level on this conspiracy claim. Accordingly, Defendants' motion to dismiss is granted with respect to Wiggs' conspiracy claim.

V.     **CONCLUSION**

Defendants' motion to dismiss is granted in its entirety. With respect to his malicious prosecution claims, Wiggs fails to set forth factual allegations sufficient to show the requisite deprivation of liberty akin to a seizure. With respect to his false arrest claims, Wiggs fails to sufficiently allege a knowing, deliberate or reckless disregard for the truth on the part of Defendants in preparation of their respective reports. Finally, with respect to his conspiracy claim, Wiggs fails to allege any of the elements of a § 1983 conspiracy. For these reasons, all of Wiggs claims are dismissed without prejudice. In addition, because Wiggs has failed to sufficiently plead his underlying claims, the Court does not opine on the merit of any qualified immunity defense at this time. *Saucier*, 533 U.S. at 201.

Because the Court cannot say for certain at this time whether amendment would be futile, it must permit Wiggs to amend his Complaint. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge